UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 20-150 (NEB/BRT)

---

UNITED STATES OF AMERICA,

PLAINTIFF

**MOTION FOR <u>FRANKS</u>
HEARING AND MEMORANUM
IN SUPPORT OF MOTION FOR
HEARING PURSUANT TO
<u>FRANKS V. DELEWARE</u>**

V.

GREGORY LYNN MCCOY,

DEFENDANT.

---

## FACTS

On October 22,2019 law enforcement executed a search warrant at 2939 Sheridan Avenue North in Minneapolis. The residence appears to be a regular house from the outside, but it is actually a multi-unit rental property. Notwithstanding outward appearances, the house is a multi-unit rental property registered with the city of Minneapolis in the county of Hennepin, affixed herein is a copy of the lease for the room rented by Mr. McCoy. *See. (Def. Ex. G -A,B,C)*

Within the two-week period to the drafting of the warrant affidavit, law enforcement received information from, a confidential reliable informant, (hereinafter CRI) that a person named "Greg" was

1



Case Number: 20-150 (NEB/BRT)                dated:2/4/2021              Page 2of 24

in possession of a gun, and was selling Cocaine and Marijuana, around the area of 29th and

Sheridan Avenue North. The CRI alleged that "Greg" uses a handgun for "intimidation and protection."

*(Def. Ex. A-2)*. The CRI provided a phone number for Greg of (612) 458-0114. id. Officer Marshall

utilized the Clear and DVS website, and learned conflicting information about, the phone numbers

provided by Metro PCS phone record affixed here see *(Def. Ex. B-2)*, shows that the number was

owned by a "Craig Davis" whose address, is on West Broadway Avenue in north Minneapolis. This

name and address was not investigated, nor was the conflicting name and address information

mentioned in the application.

Officer Marshall checked DVS records, and learned that one time, Mr. McCoy owned a 2002

Chevy Trail Blazer that was registered to the address 2939 Sheridan Avenue North in Minneapolis.

Officer Marshall alleged that he had observed this vehicle parked in front of this address "several

times" *(Def. Ex. A-2)*. The CRI informed police that Mr. McCoy stays with another individual known

as "Pumpkin" who sells narcotics and also has a gun and drives a black Range Rover, a Range Rover

was observed by Officer Marshall parked in the rear of the Sheridan address, Officer Marshall took

down the plate number and took a photograph of the vehicle, and showed it to the CRI who, believed it

looked "identical" to the one that, she had seen Gregory McCoy driving. *See (Def. Ex. A-3)*.

Within 72hours of the application for the warrant, police conducted an alleged controlled buy

with Mr. Turnage in which they say that they watched as Turnage left his residence at the boarding

house, at 2939 Sheridan Avenue North and alleged that he conducted a transaction, and then returned to

the boarding house at 2939 Sheridan Avenue . *See (DEF. Ex. A-3-4)*

**Arguments**

## I. THE STATE COURT WARRANT APPLICATION LACKED SUFFICIENT PROBABLE CAUSE TO JUSTIFY THE OCTOBER 22, 2019 SEARCH OF 2939 SHERIDAN AVENUE

The Fourth Amendments directs, in straightforward fashion:

*The right of the people to be secure in persons, house, papers, and effects, against unreasonable searches and seizures an shall not be violated, and no warrants shall be issued but upon probable cause supported by oath or affirmation.*

Mr. McCoy asserts that the information set forth in Officer Marshall's October 15, 2019 application fails to meet the constitutional standards. In addressing this question, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause. United Sates v. Gladney, 48 F.3d 824, 827 (8ᵗʰ Cir. 2005).

In common sense terms this means:

*An affidavit must provide the Magistrate with a substantial basis for determining the existence of probable cause. Sufficient information must be presented to the Magistrate to allow that official to determine probable cause, his action cannot be a mere ratification of the bare conclusions of others. In order to ensure that such an abdication of the Magistrate's duty does not occur, courts must continue to consciously review the sufficiency of affidavits on which warrants are issued.*

Illinois v. Gates, 462 U.S 213,239 (1983).

The Supreme court declared more than 50 years ago:

> *The basic purpose of this Amendment, as recognized in countless decisions of this court is to safe guard the privacy and security of individuals against arbitrary invasions by government officials. Camara v. Municipal court of the City and County of San Francisco, 3878 U.S. 523, 528 (1967).*

As a threshold matter even though the boarding house at 2939 Sheridan Avenue North was searched based on a search warrant, the search warrant is so lacking of probable cause. "*probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place.*" United States v.Skoda, 705 F.3d 834,838 (8th Cir. 2013) (quotation marks omitted) citing United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) and Illinois v. Gates, 462 U.S. 213,238,103 S. Ct. 2317, 76 L. Ed. 2D 527 (1983). The "fatal flaw" in the affidavit for the search of the boarding house at 2939 Sheridan Avenue North, is the lack of probable cause that evidence of Mr.Turnage's alleged crimes would be found at the boarding house. In order to establish probable cause, the affidavit must establish a "*nexus...between the item to be seized and criminal behavior.*" Warden v. Hayden, 387 U.S. 294, 307, 87 S. Ct. 1642, 18 L. Ed. 2D 782 (1967). " *There must also be a nexus between the contraband and the place to be searched.*" United States v. Tellze, 217 F.3d 547,550 (8th Cir. 2000). Officer Marshall's affidavit had to state direct and reliable information concluding a sufficient "nexus" existed between alleged possession of guns and drugs by Mr. Turnage and Mr. McCoy and the boarding house at 2939 Sheridan Avenue.

Officer Marshall begins with a tip from a (CRI) that Mr. Turnage and Mr. McCoy were

4

dealing drugs and possessed firearms in the area around 29th street and Sheridan Avenue, and that

Mr. Turnage "stays with" Mr. McCoy. (see Def. Ex. A – 2-3).

The affidavit fails to provide anything beyond conclusory statements that the (CRI) knows Mr.

Turnage and Mr. McCoy are engaging in illegal activity and that Mr.Turnage drives a black Range

Rover. (<u>Wong Sun v. United States,</u> 371 U.S. 471, 83 S. Ct. 407, 9 L. ed. 2D 441) (1963). (*Where*

*information said Toy operator of laundry on certain street had heroin, but several laundries on*

*that street operated by persons named Toy, probable cause lacking because there was no showing*

*the officers had some reliable information of some kind which had narrowed the scope of their*

*search to this particular Toy.)*

Critically, these statements do not reveal that the (CRI) knew where Mr. Turnage and  Mr. McCoy

supposedly live, nor do they give rise to any sort of nexus between 2939 Sheridan Avenue North

and the alleged possession of guns or drugs.

The (CRI) did not even say that she had seen Mr. McCoy or Mr. Turnage with guns and

drugs, or knew that the men possessed guns and sold drugs out of a home. As in <u>Nathanson v.</u>

<u>United States,</u> 290 U.S. 41 (1933). "*A search warrant cannot legitimately be based on the*

*conclusory beliefs of law enforcement.* " In <u>Nathanson </u>the court rejected an affidavit based on the

officer's brief assertion that the search of a particular area would result directly in the discovery of

contraband. The search warrant was all based on the (CRI's) supposition that Mr. McCoy and Mr.

Turnage were engaging in criminal activity. Just as conclusory statements are insufficient to

establish probable cause.

"nothing" indicates that a warrant to search a private dwelling may rest upon mere

affirmation of suspicion or belief without disclosure of supporting facts or circumstances

Under the Fourth Amendment an officer may not properly issue a warrant to search a private

dwelling unless he can find probable cause therefor from facts or circumstances presented by

Officer Marshall under oath or affirmation. "*Mere affirmation of belief or suspicion is not

enough*" Nathanson v. United States.*290 U.S. At 47 (*emphasis supplied)

What was presented to the State Court Judge in this application was little more than

statements of the officer's belief that he had a suspicion of criminal activity. Nathanson made it

clear that is not the basis for the issuance of a warrant. An officer needs to present some

underlying facts, which justify his or her suspicions other than the (CRI's) statements. For

example, if the police had uncovered packaging material or drug refuse in a trash receptacle used

by the residents, this would have given weight to the officer's suspicion, and backed the (CRI's)

statements.

See United States v. Briscoe, 317 F. 3d 906 (8th Cir. 2003); United States v. Sumpter, 668 F. 2d

1218 (8th Cri.1982).

Allegedly, Officer Marshall received some sort of information from the (CRI) that Mr.

Turnage and Mr. McCoy were dealing drugs near Sheridan Avenue North and 29th Avenue North.

(*see Def. Ex. A-3)* Yet, nothing in Officer Marshall's affidavit revealed any underlying facts to

support this conclusory allegation. Merely reciting the (CRI's) beliefs is not sufficient to justify a

warrant. Therefore the (CRI's) statement lacks value because Officer Marshall did not provide any

details of the information he received, that would permit the issuing magistrate to independently

evaluate his conclusion that defendants were dealing drugs or possessing guns at 2939 Sheridan

Avenue North.

Officer Marshall may not rely on a warrant based on an affidavit so lacking in idicia of

probable cause as to render official belief in its existence entirely unreasonable. But what does this

mean? A search based on a warrant not supported by probable cause is by definition an

unreasonable search. (United States v. Leon, 468 U.S. 897, 923) (Quoting Brown v. Illinois, 422

U.S. 590 610-11) (1975). Officer Marshall continued his investigation by running down names associated with two phone numbers given to him by the (CRI), which these numbers are 612-458-0114 and 612- 403-2077.(*see Def. Ex. A 2-3*) Though on the face of the affidavit he does allegedly manage to connect these numbers to both Mr. McCoy and Mr. Turnage, but neither of these numbers are tied to 2939 Sheridan Avenue in any way. Officer Marshall gives a misleading statement in affidavit, by stating that he pulled the records for each number, yet nothing in the affidavit mentions that the numbers are connected to other addresses or a different person. (*see Def. Ex. A 1-7*).

Neither phone number 612-458-0114 or 612-403-2077 does not establish a nexus between any alleged criminal activities and the boarding house at 2939 Sheridan Avenue North, according to the phone records from Metro PCS it shows that the number 612-458-0114 that Officer Marshall alleged that was connected to Mr. McCoy is billed to a "Craig Davis," whose address is on West Broadway Avenue in North Minneapolis, (*see Def. Ex. B-2*) and the second number 612-403-2077 that was said to belong to Mr. Turnage is billed to 1771 kent street in Roseville Minnesota. (*see Def. Ex. H-2*) Not only were these addresses not investigated, they were not even mentioned to the magistrate. (*see Def. Ex. A 1-7*)

Nothing in the affidavit connects these numbers to the boarding house at 2939 Sheridan Avenue North, or ("by which it is alleged that Mr. McCoy could be contacted to purchase drugs.)

In <u>United States v. Herron,</u> the Eight Circuit held that the good faith exception does not save a search warrant where the supporting affidavit provided no evidence of illegal activity at the address to be searched. <u>United States v. Herron,</u> 215 F.3d 812, 815 (8th Cri. 2003) *(finding that lack of evidence in a search warrant affidavit and the "obvious nature of the deficiency"*

*meant an officer could not reasonably rely on the warrant).*

In that case Tommie Buck was suspected of growing marijuana on his farm, which was Mr. Herron's property. Id. At 813. Mr. Herron and Mr. Buck were cousins. Id. Mr. herron had two previous convictions for cultivating marijuana in a different state, and Mr. Buck had been living at Mr. Herron's farm for four months before the warrant was issued. Id. The warrant affidavit said little else tying Mr. Buck's suspected illegal activity to either Mr. Herron or his property .Id. At 814 ("The affidavits simply does not say very much abut Mr. Herron or his residence.") The Eight Circuit held that the flaws in the affidavit went beyond mere technical legal deficiencies, and as a result the good faith exception did not apply. Id. At 814, cf. United States v. Carpenter, 341 F.3d 666, 673 (8th Cir. 2003) (finding that good faith exception applied where "potential legal deficiencies" were minor). By contrast the Eighth Circuit has indicated that failing to specifically mention that narcotics are likely to be found in a suspect's home is a "technical legal deficiency" where the affidavit at issue contained an established connection between an individual and the drug trade and the targeted residence was specifically identified as that individual's home. Carpenter, 341 F.3d at 673.

In this case the boarding house at 2939 Sheridan Avenue North warrant affidavit did not contain the supporting indicia that led the Carpenter court to apply the good faith exception. The affidavit seeking permission to search the boarding house at 2939 Sheridan Avenue North allegedly tied Mr. Turnage to narcotics trafficking, but did not establish the boarding house's connection to those activities, either through Mr. McCoy's participation nor through Mr. Turnage's "residency". As such this case closely mirrors the facts of Herron. Mr. Turnage was known to have been seen at the boarding house at 2939 Sheridan Avenue North at least once, which is even more attenuated than the facts in Herron, where the suspect was known to have

once lived on Mr. Herron's farm. As with Mr. Herron's property there is simply no indication in

the affidavit that the boarding house at 2939 Sheridan Avenue North was connected to the

suspect's alleged illegal activities.

The Eight Circuit's Herron's decision does not stand alone. Other circuit courts have

found police reliance on warrants entirely unreasonable where supporting affidavits fail to

demonstrate a nexus between suspected criminal activity and the place to be searched.

See United States v. Brown, 828 F.3d 375, 385-86 (6th Cir. 2016) *(concluding the district court*

*erred in denying a motion to dismiss and that reliance on the warrant was entirely*

*unreasonable where the affidavit did not draw a "plausible connection to the residence" to be*

*searched);* United States v. Underwood, 725 F.3d 1076, 1086-87 (9th Cir. 2013) *(affirming*

*district court's suppression order and concluding that the Leon exception did not apply where the*

*affidavit provided "no factual basis for the conclusion that drug trafficking* United States v.

Gonzales, 399 F.3 1225, (10th Cir. 2005) *(finding the Leon exception inapplicable where the*

*affidavit lacked a "factual basis connecting the place to be searched to the defendant or*

*suspected criminal activity" so that reliance on the warrant was "entirely unreasonable");*

United States v. Laughton, 409 F.3d 744, 749 (6th Cri. 2005*) (reversing a district court decision*

*based on the Leon exception where there was no "modicum of evidence, however slight, to*

*connect the criminal activity to the place to be searched").*

This case, likewise is the rare one where the complete lack of nexus rendering reliance on

the warrant, entirely unreasonable precisely because there was no connection in the affidavit

drawn between, the boarding house at 2939 Sheridan Avenue North and Mr Turnage's alleged

activities.

Mr McCoy requests a Franks hearing to further develop the evidentiary record in this matter.

## II. THE INFORMATION ABOUT THE TRAILBLAZER WAS STALE AND ITS INCLUSION IN THE WARRANT WITHOUT INFORMING THE MAGISTRATE OF WHEN THE VEHICLE WAS SEEN NEAR THE SHERIDAN HOUSE IS AN OMMISSION EVINCING RECKLESS DISREGUARD FOR THE TRUTH.

Officer Marshall states that he ran Mr. McCoy's name through the, DVS database and locates a 2002 Chevy Trailblazer registered in, Mr. McCoy's name addressed to,2939 Sheridan Avenue. *(see Def. Ex. A-2)*. The affidavit does not mention that the, CRI confirms this to be, McCoy's vehicle. Neither the CRI's information nor, Officer Marshall's continued investigation revealed any nexus between the vehicle and any illegal activity. Though Officer Marshall's affidavit does state he, observed the vehicle outside of 2939 Sheridan Avenue on multiple occasions, *(see Def. Ex. A-2)* but still fails to provide information of Mr. McCoy, being observed near the residence, or the vehicle.

Mr. McCoy sold that vehicle, weeks before the executed warrant, thereby making it stale information. When the vehicle was allegedly observed is a necessary ingredient of a finding of probable cause just as important as where the vehicle was observed. See Gates v. Illinois, 462 U.S. 213,245 (1983); Draper v. United States, 358 U.S. 307 (1959). Inclusion of knowingly stale information  without informing the magistrate of the temporal infirmities is illustrative of reckless disregard for the truth. Its absence from the affidavit diminishes the probable cause, by straining the geographic and temporal nexus between Mr. McCoy and the boarding house at 2939 Sheridan Avenue North, which is required by Gates and Draper, supra.

The next attempt to connect the boarding house to alleged illegal activities on the part of Mr. McCoy and Mr. Turnage is through a Range Rover, that according to the (CRI) Mr. Turnage drives a "black Range Rover." (see Def. Ex. A -3) Though the affidavit does state that

10

Officer Marshall observed a Range Rover in the rear of 2939 Sheridan Avenue and took down the license plate number But it in no way connects that vehicle to Mr. Turnage other then the (CRI's statement that Mr. Turnage drives the Range Rover.

The affidavit plainly does not state any facts which could lead to the conclusion that Mr. Turnage's Range Rover was ever seen parked behind the boarding house.

Another statement that the (CIR) makes is that the Range Rover is identical to the one she has seen Gregory McCoy driving. (see Def. Ex. A-3)  Nothing in the affidavit provides reliable facts that the two men shared vehicles, and nothing in the affidavit even suggest that the Range Rover belongs to Mr. Turnage. Officer Marshall does state in the second warrant application that the black Range Rover license plate number DCU066 is registered to John NMN Turnage D.O.B. 04\03\69, "but that is a false statement." (*see Def. Ex. E-2*) The Range Rover is registered to a "Denise Pickford" (*see Def. Ex. C-4*).

These omissions becomes more troubling when Officer Marshall said he checked the DVS record for Mr. McCoy it is also reasonable to assume that he checked for Mr. Turnage as well. After all, the (CIR's) information related to both Mr. McCoy and Mr. Turnage. A, DVS check on Mr. Turnage would reveal that his drivers permit listed him to 1771 kent street in Roseville Minnesota (*see Def. Ex. C-4*) , and also Officer Marshall recklessly disregard for the truth by omitting the fact that Mr. McCoy's drivers license listed him to 2329 11th avenue east in the city of North St. Paul. (*see Def. Ex. C-3*)

The address listed on Mr. McCoy's drivers license was not revealed to the magistrate nor was it investigated as Mr. McCoy's actual address. (*see Def. Ex. A 1-7*)  Another issue is that Officer Marshall did or should have spoken to Mr. McCoy's and Mr. Turnage's probation agents,he knew both parties were on federal probation (*see Def. Ex. I-14* )

Mr. Turnage's address on file with the United States Federal Probation Office has him listed to 3400 Tyler Street Northeast Minneapolis. *(see Def. Ex. J -1,2)* Also included herein is Complaint and Order of Detention from Hennepin County District Court for John Turnage with an address listed to 3400 Tyler Street Northeast Minneapolis, that was signed by Officer Jeff Marshall the "Complainant." (see Def. Ex. D −1,4) Your affiant Officer Marshall neglected to inform the Magistrate of this conflicting address also.

   (***An address on file with the United States Probation Office is strong evidence of where a probationer is living.***) see: case 0:19-CR-0050-ADM-TNL. ANN MONTGOMERY'S ORDER PAGE 11.)

   Thus, by the time that the alleged controlled buy occurred nothing had established any nexus between Mr. Turnage and the boarding house at 2939 Sheridan Avenue
*" A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched. "* United States v. Skarda, 845 F.3d 370 (8th Cir. 2016) (quotation marks omitted) (quoting United States v. Tellez, 217 F.3d 547,550 (8th Cir. 2016). See United States v. Rios-Uscanga 2017 U.S. Dist. Lexis 68009 (D. Minn. 2017). ( *"A warrant to search a residence was not based on probable cause as required by the Fourth Amendment because  the warrant affidavit failed to establish that proof of drug trafficking would be found at the residence. There was no showing of a tie between the residence and defendant's illicit activities. "* ) The affidavit here reveals that the (CRI) did not identify 2939 Sheridan Avenue North as either man's address and up to that point neither Mr. Turnage nor Mr. McCoy had been seen entering or exiting the boarding house. The alleged controlled buy is the first instance of any suggestion of a connection between Mr. Turnage and that is too minimal. "Certainly, the nexus showing required by the Fourth Amendment need not be very significant." See, e. g., United States v. Ross, 487 F.3d 1120,

1123 (8th Cir. 2007) (*nexus to search individual's home exists where that person is closely tied to narcotics trafficking)*; United States v. Patterson, 666 Fed. Appx. 569, 2016 WL 7404778, at *2 (8th Cir.2016) (pre curiam) (*frequent visits to a home by a known drug dealer can establish a nexus to a home for contraband);* United States v. Keele, 59 F.3d 940,944 (8th Cir. 2009) (*nexus sufficient* to *justify a warrant existed between narcotics found at a car accident scene and the driver's home)*. All the affidavit here states is that Mr. Turnage was seen exiting the boarding house at 2939 Sheridan Avenue North and going to the alleged controlled buy, "the affidavit is silent on whether by car or by foot." selling drugs and returning to the property. (*see Def. Ex. A-4).*

Nothing can be in inferred from the facts stated in the affidavit, if the amount of drugs sold was so large as to think that it would have been stored in the boarding house, or that Mr. Turnage traveled to the sale on foot, an not in a vehicle where the drugs could have actually been stored and retrieved from, even if officers observed that Mr. Turnage "went directly" to the alleged sale. Again the affidavit is silent on these facts, and fails to establish a proper nexus between 2939 Sheridan Avenue and drug sales as well as firearm possession. " *The task of a court issuing a search warrant is simply to make a practical commonsense decision whether given all the circumstances set forth in the affidavit ... there is a fair probability that contraband or evidence of a crime will be found in a particular place."* Illinois v. Gates, 462 U.S. At 238 also see United States v. Seidel, 677 F.3d 334,337 (8th Cir. 2012). Therefore at the conclusion of the alleged buy no facts supported the idea that Mr. Turnage possessed any quantity of drugs, much less that they would be located at the boarding house. " *Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place."* United States v. Skoda, 705 F.3d 834,838 (8th Cir. 2013) *(*quotation marks omitted) (citing United

States v. Donnelly, 475 F.3d 946,954 (8th Cir. 2007) and Illinois v. Gates, 462 U.S. 213, 238, 103

S. Ct 2317, 76 L. Ed. 2D 527 (1983). *When determining whether probable cause exists, a court*

*does not independently evaluate each piece of information, but rather considers all of the facts*

*for their cumulative meaning.* United States v. Allen, 297 F.3d 790, 794 (8th Cir. 2002). The

affidavit here shows no suspicious activity on the boarding at 2939 Sheridan Avenue North, but

mere speculation of Officer Marshall. Indeed, recent Eight Circuit decisions exploring probable

cause highlights the sort of facts that are missing from Officer Marshall's affidavit. See, e.g.,

Patterson, 666 Fed. Appx  569, 2016 WL 740778, at *2 (*affirming probable cause to search*

*residence based on frequent visits by a known drug dealer, who used the home for storage*);

Keele, 589 F.3d at 944 (*affirming probable cause to search driver's home where narcotics were*

*found at a car accident scene);* Ross, 487 F.3d at 1123 (*affirming probable cause to search*

*individual's home, where that person is closely tied to narcotics trafficking);*

  United States v. Briscoe, 317 F.3d 906, 908 (8th Cir. 2003) (*affirming probable cause based*

*on evidence of drug use found in a trash pull);* United States v. hartje, *251 F.3d 771,774 (8th Cir.*

*2001) (affirming probable cause based on strong showing of narcotics distribution at suspect's*

*residence);* United States v. Jackson, 898 F.2d 79,81 (8thCir. 1990) (*affirming probable cause*

*based on confirmation that that utility bill was in suspect's name).* In Officer Marshall's affidavit

none those facts are present. The affidavit offered no facts whatsoever that "Mr. Turnage nor

Mr. McCoy lived at the boarding house," or that there was any link between the boarding house and

suspected drug activities.

  The affidavit is devoid of any facts, or inferences establishing Mr. Turnage had ever been to

the property before the day of the alleged controlled buy, or "that he did not pick up drugs on his

way to the boarding house . The alleged buy did not occur at the residence, and nothing about the

alleged transaction indicated that Mr. Turnage even returned to the boarding house in possession of

drugs, guns or marked money therefore because of this no nexus existed between any illegal

activity and the boarding house, and Officer Marshall's affidavit is deficient on it's four corners.

First the government's reading of the probable cause jurisprudence would leave little point

in reviewing warrants at all. Reviewing courts would need to assume that officers had good

information on which to base a search, even if it was never provided to the issuing judge. Such an

argument finds no support in the law. United States v. O'Dell, 766 F.3d 870,874 (8th Cir. 2014)

("*When the issuing judge relied solely upon the supporting affidavit to issue the search warrant,*

*information which is found within the four corners of the warrant, only that of the affidavit may be*

*considered in determining the existence of probable cause,"*) (alteration omitted) (citing

 United States v. Solomon, 432 F.3d 824,827 (8th Cir. 2005).

Officer Marshall essentially ask the court to assume that Mr. Turnage must have lived at the

boarding house, because only that assumption could explain the officers desire to search it.

However, probable cause jurisprudence is full of request to search places where a drug dealer might

store his drugs aside from his own home. See United States v. Ways, 832 F.3d 887,892 (8th Cir.

2006) (*finding probable cause existed to search defendant's retail stores for narcotics*), reh'g.

denied (Oct. 19, 2016) cert, Denied, No. 16-7622, 2017 U.S. 935, 2017 WL 320816 (U.S. Feb. 21,

2017); Walker, 230 F.3d at 1365. The "police" could have asked to search the boarding house

because they knew Mr. Turnage lived there ,or because they believed he stored his narcotics with

Mr. McCoy, or because Mr. McCoy was his drug source. Mr. McCoy invites the Court to adopt one

these unstated reasons over the other, but none are in the affidavit and without a more rationale

explicitly statements on the face of the affidavit the Court must not find that an appropriate

probable cause nexus was established.

Mr. McCoy request a Franks hearing to further develop the evidentiary record in this matter.


### III.  LAW ENFORCEMENT KNEW OR SHOULD HAVE KNOWN THAT 2939 SHERIDAN AVENUE NORTH WAS A RENTAL PROPERTY WITH TENANTS HAVING INDIVIDUAL LEASE HOLDS

It is inconceivable that law enforcement did not know this fact when Officer Marshall requested

the warrant. By allegedly characterizing Mr. Turnage and Mr. McCoy as essentially

"roommates," rather than possibly being individual tenants of a rental building registered with the

city of Minneapolis, the magistrate would never have issued the warrant for Mr. McCoy's unit.

Purposely omitting this fact eliminates overbreadth from the magistrate's analysis.

Law enforcement's incomplete information, and the incomplete investigation of the property

registered as rental property that was provided to the magistrate should be characterized as a

reckless disregard for the truth. An additional duty of thorough investigations was imposed on

warrant applicant by the United States Supreme Court in Maryland v. Garrison, supra. at 85.

In Garrison, police obtained a warrant for the 3rd floor of an apartment mistakenly believing that

there was one rather than seven units on the third floor. The resulting warrant was overbreadth, but

the Court refused to invalidate the warrant because of the Officer's "mistake."

The facts of this case is completely distinguishable from the facts of Garrison. Here the

police absolutely had to know that all tenants of the boarding house rented separate units, this was

no mistake as the police made in Garrison, the pattern of omissions here can only lead to the

conclusion that law enforcement was trying to create probable cause out of thin air.

Here again additional duty would have included speaking to Mr. McCoy's Federal Probation

agent to find out his actual living status, and had the fact that it was a multi unit dwelling and given

the dearth of probable cause connecting Mr. Turnage to the property the magistrate may have

"possibly" found probable cause as to Mr. Turnage's unit, but not as to Mr. McCoy's unit. The

warrant for the entire house was purposely "overbreadth." Again, inclusion of this information

would have further negated probable cause and was in reckless disregard for the truth, specifically

as to Mr. McCoy's unit. The Court must identify four situations in which the Leon good faith

exception does not apply in this case: (1) Where the affiant made a false or misleading statement,

see Franks v. Delaware, 438 U.S. 154, 155-56, 171-72 (1978); (2) When a Magistrate fails to act in

a neutral and detached manner and not serve merely as a rubber stamp for the police, see Lo-ji

sales, Inc. v. New York, 442 U.S. 319, 326-28 (1979); Aguilar v. Texas, supra, at 111,12 L Ed 2d

723, 84 S Ct 159. See Illinois v. Gates, supra, at 239, 76 L Ed 2d 527,103 S Ct 2317 (3) when a

warrant is based on a affidavit so lacking in indicia probable cause as to render official belief in

its existence entirely unreasonable, see Leon, 468 U.S. At 923; (4) the search warrant is so

deficient that no officer could reasonably presume it to be valid, United States v. Pucket, 466 F.3d

626,630 (8th Cir. 2006)."

　　　For the reasons stated herein, Mr. McCoy respectfully request that the Court hold a Frank's

Hearing to further develop the evidentiary record in this matter.


## IV.    THE ILLEGALY SEIZED DODGE DURANGO


　　　The search of Mr. McCoy's Durango violated his rights per the Fourth, Fifth, and Fourteenth

Amendments of the Constitution of the United States, and article I § 10 of the Constitution of the

State of Minnesota. It was only undertaken because of the previously discussed warrant for the 2939 Sheridan Avenue boarding house, and was towed in violation of Minn. Stat.§ 168B.35 Federal Rules: Fed R Crim P 41 (c) (1) (magistrate  shall issue a warrant identifying the property, or person to be seized and naming or describing the person or place to be searched.)

In United States v. Coleman, 909m F. 3d 925 (8th Cir. 2018), *the Eight Circuit concluded a search warrant executed to search the premises and curtilage is permitted, by the officers ... to search a vehicle parked in the curtilage.* Officer Marshall does mention to search within the curtilage of the boarding house at 2939 Sheridan Avenue North, but the Magistrate did not approve that petition. *(see Def. Ex. A 1-9).* The Dodge Durango was not parked within the curtilage of the boarding house, but was legally parked down the street. Officer Marshall even admits that the Durango was not on the property. See *(Def. Ex. F-18 row 18,19)*

Another conflicting issue is that the Dodge Durango was not mention in the affidavit for the search warrant for 2939 Sheridan Avenue , which makes the search of durango beyond the scope of the warrant for 2939 Sheridan Avenue. See *(Def. Ex. A 1-9)* Therefor it was a warrantless  search and seizure of Mr. McCoy's vehicle.(see, United States v. Hogan 25 F.3d 690; 1994 U.S. App. Lexis 13068). *"At most the agents had a hunch that the drugs from the house or truck might be in the Oldsmobile. The prerequisite to a valid search under the automobile exception however is probable cause not a hunch "* An Officers subjective belief no matter how sincere that he/she has sufficient cause to seize a vehicle, or to conduct a search does not itself  constitute probable cause.

Here there can be no doubt that there was not an independent source of probable cause for the search of Mr. McCoy's Durango. The vehicle that was named in Officer's Marshall's affidavit was a "gray 2002 Chevrolet Blazer," MN. License Plate number CUV- 541. See *(Def. Ex. A-2)* Not the "Red Dodge Durango" MN. License Plate number DLP- 311.(see *Def. Ex. A 1-9).*

Law enforcement were only at the residence to carry out a search pursuant to the first warrant, and by Officer Marshall's own sworn statement in the affidavit of the second warrant he only "searched" the Durango by way of a dog sniff because of what was discovered in the home while carrying out the first warrant. (*see Def. Ex. E-3*)  See <u>United States v. Hogan</u> 25 F.3d 690;1994 U.S. App. Lexis 13068. (*Where search was unlawful under same or similar circumstances*)      Thus, although dog sniff's can constitute probable cause for a search, the sniff of McCoy's Durango was not "genuinely" independent because it only occurred because of the first warrant. Also the false positive dog alert on the Durango adds more to lack of probable cause based on the vehicle being searched and no narcotics being found. (*see Def. Ex. F-16 row 11-14*) Furthermore it adds to the fact that Officer Marshall only had a hunch that drugs or guns could possibly be in the Durango.

Moving beyond simply the warrant, the manner in which Mr. McCoy's Durango was towed also merits suppression. At the Omnibus hearing in the State Court, Officer Marshall testified that the Durango was towed only because he thought it would be "safer" for all involved. (*see Def. Ex. F-18 row 19-21*). This is not a "lawful" purpose for a tow under any Minnesota statue. As such, evidence obtained during the subsequent search of the durango must be suppressed as fruit of the poisonous tree. See <u>Segura v. United States,</u> 468 U.S. 796, 804, 104 S Ct. 3380, 82 L. Ed. 2D 599 (1984). *" Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion. "*

The exclusionary rule applies with equal force to evidence that is derivative of an illegal search, unless the connection between the constitutional violation and the evidence is "so attenuated as to dissipate the taint."<u> Wong Sun v. United States,</u> 371 U.S. 471, 487, 88 S. Ct. 407, 9 L  Ed. 2D 441 (1963) (citing <u>Nardone v. United States</u>, 308 U.S. 338,341,60 S. Ct. 266 84 L. Ed.

Case Number: 20-150 (NEB/BRT)                    dated:2/4/2021                    Page 20of 24

307 (1939). *It is the defendant's burden to make an initial showing that evidence has been tainted by an unconstitutional search.* See <u>United States v. Riesselman,</u> 646 F.3d 1072,1079 (8ᵗʰ Cir.2011).

 As explained above the evidence seized from the Sheridan address must be suppressed because the search warrant was fatally flawed. It was the government's burden to establish that the subsequent warrants and the physical evidence seized as a result of them were "untainted" by the initial flawed warrant. If the warrant of the Sheridan Avenue boarding house was unlawful, the subsequent search warrants and physical evidence seized as a result are fruits of the poisonous tree. As a result Mr. McCoy request that the physical evidence seized pursuant to the warrant of 2939 Sheridan, and the illegal seizure of the Dodge Durango to be suppressed as fruit of the poisonous tree. Minn. Stat. § 168B.035 Subd. 3(b) establishes the purpose for which a tow is lawfully authorized, and this is not one of them.

 Even the most permissive of the statue's subdivision does not grant officers the authority to tow here. Subdivision 3 (b) (11) " allows a law enforcement official that has probable cause to believe that the vehicle is stolen or that the vehicle constitutes or contains evidence of a crime and impoundment is reasonably necessary to obtain or preserve the evidence." (While the law is strangely written its history of application makes clear that tows conducted for reasons not explicitly enumerated in subd. 3 (b) " are unlawful."

 Alternatively the same result can be reached by a broad reading of the Rule,**\*\*\*** <u>Smith v. Katzenbach,</u> 122 U.S. App. D.C. 113,351 F.2d 810,814 (1965). Although some searches in violation of a statute do not constitute a Fourth Amendment violation see <u>Florida v. Jardines,</u> 596, U.S. 1, 8-10,133 S. Ct. 1409, 185 L. Ed. 2D 495 (2013). *" In the absence of warrant a search is reasonable only if it falls within a specific exception to the warrant requirement."* <u>*Riley v. California,*</u> 573 U.S. 373 S. Ct. 2473, 2482, 189  L. Ed. 2D 430, (2014). One exception

Case Number: 20-150 (NEB/BRT)                     dated:2/4/2021                 Page 21of 24

to the warrant requirement permits law enforcement to conduct a search without a warrant or

probable cause based upon an individual's consent so long as consent was voluntary and came

from someone authorized to give it. "Appellate Courts have only found these technical violations

exist wherein the violations did not subvert the basic purpose of the statue." Here the purpose of

the statue is clear to require more than probable cause to allow the police to tow a legally parked

vehicle by also mandating  they have a reasonable belief a tow is necessary to obtain or preserve

evidence.

When the Minnesota Legislature passed a law barring towing except under certain

circumstances, it is providing additional protection against seizures afforded to citizens. The

towing statute is rightly viewed as protection against certain forms of property seizure, the

purpose of which is directly contravened when an otherwise legally parked vehicle is towed

without reasonable belief impoundment is necessary to preserve or obtain evidence, even if law

enforcement has probable cause to search it. The record is clear, no reasonable basis for such a

tow existed here Officer Marshall was asked directly whether he had any reason to believe that

impoundment was necessary to obtain or preserve evidence at the evidentiary hearing on July

15, 2020. Officer Marshall answered that he tows vehicles to be searched in every instance,

because he believes it is safer for all those involved. Thus, he had no reasonable belief towing

the Durango was necessary to obtain or preserve evidence as required by law.

Officer Marshall explicitly testified he could have obtained a search warrant for the vehicle

and searched it in front of the home, but chose not to. (*see Def. Ex. F- 17 row 2-4*). In fact, as

Officer Marshall testified "the tow involved allowing a third party not affiliated with law

enforcement to access the interior of the vehicle and potentially disturb it's contents. (*see Def.*

*Ex. F-17 row 25 and Def. Ex. F-18 row 2*). thus this statutory violation is also a Constitutional

violation, because it is the sort described in <u>Elkins v. United States,</u> 364 U.S. 206, 223-24, 80 S.

Ct. 1437, 4L. Ed 2D 1669 (1960). (*Evidence obtained as the result of an unreasonable search*

*and seizure by state officers cannot be used against a defendant in federal court)*

     This violation cannot be cured by subsequently securing a warrant for the vehicle. In fact,

the Eight Circuit Court has explicitly held a legal search incident to an illegal tow is tainted by

the illegality of the tow. <u>Beck v. Ohio,</u> 379 U.S. 89, 91 , 13 L. Ed. 2D 142, 85 S. Ct. 223 (1964).

Once Officer Marshall ordered the unlawful tow of the Durango he forfeited  his right to search

it under any prior exception to the warrant requirement he may have had. Under the fruit of the

poisonous tree doctrine suppression is the appropriate remedy, not only for the evidence directly

obtained as the result of a Fourth Amendment violation, but also evidence that flows indirectly

from unlawful searches and seizures. <u>Wong Sun v. United States,</u> 371 U.S. 471, 484-88, 83 S.

Ct. 407, 9L. Ed. 2D 441 (1963); <u>United States v. Tuton</u>, 893 F.3d 562, 568 (8ᵗʰ Cir. 2018) (*"The*

*exclusionary rule extends evidence later discovered and found to be derivative of an illegality or*

*fruit of the* poisonous *tree.")* (quoting <u>Segura v. United States,</u> 468 U.S. 796,804, 104 S. Ct.

3380, 82L.Ed. 2D 599 (1984). The lack of probable cause in this application does not end the

inquiry. When a warrant is not supported by probable cause ,before determining that evidence

must be suppressed a reviewing court must consider whether it was "objectively reasonable" for

an officer executing the search to rely in good faith on the Judge's determination that there was

probable cause to issue the warrant. <u>United States v. Hudspeth</u>, 525 F.3d 667, 676 (8ᵗʰ Cir.

2008).*That is the reviewing court must ask whether the warrant is so facially lacking in probable*

*cause as to preclude the executing officer's good faith reliance thereon.*

     <u>United States v. McNeil,</u> 184 F.3d 770,775 (8ᵗʰ Cir. 1999) (citing <u>United States v.</u>

<u>Leon,</u>468 U.S, 879,922-23, 104 S. Ct. 3405, 82 L. Ed. 2D 677 (1984).

*This test requires a warrant affidavit be so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.* United States v. Leon, 468 U.S. 897, 923 104 S. Ct. 3405, 82 L. Ed. 2D 677 (1984) (*citing* Brown v. Illinois, *422 U.S. At 610-11* (powell, J. concurring in part). *Certainly, it is rare for a search warrant affidavit to be so flawed as to meet this demanding standard, but this is that rare instance*

Mr. McCoy request a Franks Hearing to further develop the evidentiary record in this matter.

## CONCLUSION

The failure of Officer Marshall to consistently fail to include information that was inconsistent with a finding of probable cause is evidence of a deliberate attempt to mislead the Magistrate. One might call this the ends that justify the means investigation by Officer Marshall, but his refusal to follow up leads that were inconsistent with the conclusions that he wanted, and to omit them from the affidavit was at least reckless disregard for the truth, All evidence gathered pursuant to both the boarding house at 2939 Sheridan avenue North, and Mr. McCoy's Dodge Durango must be suppressed

An insufficient nexus existed between the boarding house and any illegal activity to justify the issuance of a search warrant for guns or drugs on the premises. Furthermore, the warrant for Mr. McCoy's Dodge Durango is fatally tainted because it is the fruit of the invalid warrant for the boarding house at 2939 Sheridan Avenue North having no genuinely

Case Number: 20-150 (NEB/BRT)                     dated:2/4/2021                     Page 24of 24

independent basis. This illegality is only compounded by the State's violation of minn. Stat. §

168B.035, which renders the seizure of the Durango unreasonable and in violation both the

Fourth & Fifth Amendment of the Constitution of the United States of America, and Article I§

10 of the State of Minnesota. Also Officer Marshall must have or should have known 2939

Sheridan Avenue North is a multi-unit rental property that is registered with the City of

Minneapolis, in the County of Hennepin. That is had he done a thorough investigation of the

property as required by law. The consistency with which the affiant Officer omitted information

strongly suggests that the omission was deliberate, or at best done with reckless disregard for

whether the information presented to the Magistrate was true .

The corrected affidavit does not supply a sufficient nexus to the boarding house at 2939

Sheridan Avenue North to justify the search which is an unreasonable search warrant.


Mr. McCoy respectfully request a Franks Hearing to further develop the evidentiary record in

this  matter. Officer Marshall must try to explain why the omissions were made, if not for to

mislead and inflate probable cause. And for all the above mentioned reasons this Court must

dismiss the indictment.


Dated February 4, 2021


Respectfully submitted

/s/ Gregory L McCoy
Sherburne County Jail
13880 Business Center Dr. NW.
Suite 200
Elk River,MN. 55330