## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Crim. No. 20-150 (NEB/BRT) |
| Plaintiff, | |
| v. | **ORDER** |
| Gregory Lynn McCoy, | |
| Defendant. | |

Joseph S. Teirab, Esq., and David J. MacLaughlin, Esq., United States Attorney's Office, counsel for the United States.

Gregory Lynn McCoy, pro se Defendant.

Jordan L. Kushner, Esq., Law Office of Jordan Kushner, stand-by counsel for Defendant.

This action came before the Court on May 4, 2021, for a hearing on various pretrial motions filed by Defendant Gregory Lynn McCoy. (Doc. No. 101.) Based on the file and documents contained herein, along with the memoranda and arguments of the parties, the Court makes the following Order:

**1.     The Government's Motion for Discovery pursuant to Federal Rules of Criminal Procedure 16(b), 12.1, 12.2, 12.3 and 26.2 (Doc. No. 17) is GRANTED as follows:** The Government seeks discovery under Rules 12, 16, and 26. McCoy has not objected to the Government's request. McCoy shall comply with his obligations under Rules 12, 16, and 26. The parties must disclose the identity of any non-rebuttal experts and all non-rebuttal expert disclosures required by Rule 16 no later than **30 days** before

trial. Any rebuttal experts must be noticed along with the production of rebuttal expert disclosures no later than **10 days** before trial.

  2. **McCoy's Motion for Discovery (Doc. No. 70) is GRANTED as follows:** McCoy seeks discovery under Rule 16. The Government does not oppose McCoy's motion. Accordingly, the Government shall produce all discovery required by Rule 16. As discussed in the preceding paragraph, expert disclosures shall be made no later than **30 days** before trial and rebuttal expert disclosures shall be made no later than **10 days** before trial.

  3. **McCoy's Pretrial Motion for Production of Grand Jury Transcripts (Doc. No. 52) is GRANTED IN PART and DENIED IN PART as follows:** McCoy moves pursuant Rules 12(i) and 26.2 for disclosure of grand jury transcripts of witnesses the Government intends to call at a motion hearing or trial. The Government responds that it will produce Jencks Act and Rule 26.2 materials as required by those authorities, but objects to producing such materials in advance of a witness's testimony. (Doc. No. 90 at 1.) To the extent grand jury transcripts constitute *Brady* or *Giglio* materials, the Court's Order herein requiring disclosure controls. To the extent grand jury transcripts constitute only Jencks Act materials, the Court's Order herein governing such disclosures controls. McCoy's motion is otherwise denied.

  4. **McCoy's Motion to File Later Motions for Good Cause (Doc. No. 53) is DENIED as follows:** McCoy seeks an order allowing him file late motions. Should McCoy find it necessary to file a late motion, he may seek leave from the Court to do so.

The Court will not provide preemptive permission to file motions outside the process contemplated by the Federal Rules of Criminal Procedure and the Court's deadlines.

5. **McCoy's Pretrial Motion for Participation by Counsel in Voir Dire (Doc. No. 55) is DENIED as follows:** McCoy moves pursuant to Rule 24(a) to permit supplementation to the Court's voir dire examination. The District Judge will determine voir dire procedure. McCoy may reassert this motion at the appropriate time.

6. **McCoy's Motion for Release of *Brady* Materials (Doc. No. 71) is GRANTED as follows:** McCoy seeks materials under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. The Government indicates it has complied and will continue to comply with its obligations under *Brady*, *Giglio*, and their progeny. Accordingly, McCoy's motion is granted to the extent it is not moot. Within **10 days** of the date of this Order, the Government must disclose all *Brady* information in its possession or of which it has become aware as of the date of this Order and must promptly supplement its disclosure upon receipt of any additional *Brady* information not previously disclosed.

7. **McCoy's Motion for Disclosure of Rule 404(b) Evidence (Doc. No. 72) is GRANTED as follows:** McCoy seeks notice of the Government's intent to use any Rule 404(b) evidence at trial. The Government indicates it understands its obligations under Rule 404(b) and requests a deadline of two weeks prior to trial. Accordingly, the Government shall produce Rule 404(b) evidence no later than **14 days** prior to trial.

8. **McCoy's Motion to Retain Rough Notes (Doc. No. 73) is GRANTED as follows:** McCoy seeks an order requiring all law enforcement personnel to preserve all notes and memoranda related to this case. The Government does not oppose.

Accordingly, the Government shall instruct its agents to preserve and retain all rough notes related to this proceeding.

9. **McCoy's Motion for Early Disclosure of Jencks Act Material (Doc. No. 79) is DENIED as follows:** McCoy seeks Jencks Act material from the Government at least two weeks prior to trial. The Government objects to this motion but volunteers to provide Jencks Act materials no later than three days prior to trial. The Eighth Circuit has repeatedly held that the government may not be required to make pretrial disclosure of Jencks material. *United States v. Sturdivant*, 513 F.3d 795, 803 (8th Cir. 2008); *United States v. White*, 750 F.2d 726, 728–29 (8th Cir. 1984). Because the Jencks Act plainly provides that "no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case," McCoy's motion is denied. Nothing in this Order, however, precludes the Government from voluntarily providing Jenks Act material to McCoy **three days** prior to trial as the Government has represented.

10. **McCoy's Motions for Hearing Pursuant to *Franks v. Delaware* (Doc. Nos. 75, 76, 77)** [1] **are DENIED as follows:** A *Franks* hearing is required when the defendant makes "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the

---

[1] A magistrate judge may be designated to rule on any non-dispositive matter pending before the court. 28 U.S.C. § 636(b); Fed. R. Crim. P. 59(a). Motions for *Franks* hearings are non-dispositive. *See, e.g.*, *United States v. Mays*, No. 19-cr-0075 (ECT/HB), 2019 WL 4565636, at *4 (D. Minn. Sept. 20, 2019).

warrant affidavit, and [ ] the allegedly false statement is necessary to the finding of probable cause[.]" *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978); *United States v. Conant*, 799 F.3d 1195, 1199 (8th Cir. 2015) (quoting *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001)). To prevail on a *Franks* claim based on at least reckless disregard for omissions of fact, a defendant must show: "(1) that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading; and (2) that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *Reinholz*, 245 F.3d at 774. This showing of deliberate or reckless falsehood is "not lightly met." *United States v. Wajda*, 810 F.2d 754, 759 (8th Cir. 1987). In particular, a defendant must "point out specifically the portion of the warrant affidavit that is claimed to be false; and [the allegations] should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Franks*, 438 U.S. at 171. The "preliminary showing" requirement is necessary "to prevent the misuse of a veracity hearing for purposes of discovery or obstruction." *Id.* at 170.

    Hennepin County Sheriff Deputy Jeff Marshall applied to Hennepin County district court for a search warrant on October 15, 2019. (Gov't Ex. 1.) Deputy Marshall believed certain evidence would be found at [XXXX] Sheridan Avenue North in Minneapolis, Minnesota related to controlled substance distribution and firearms. (*Id.* at 1.) Deputy Marshall detailed that he and the Hennepin County Violent Offender Task Force were working with a confidential reliable informant (CRI) who had previously

5

provided names and addresses of suspects involved in narcotics distribution in the Twin Cities metro area. (*Id.* at 2.) The CRI's past information was independently corroborated and resulting investigations led to seizures of large amounts of narcotics and weapons. (*Id.*)

Deputy Marshall indicated he was presently investigating Defendant Gregory Lynn McCoy and John Turnage. (*Id.*) In the two weeks prior to the affidavit, the CRI indicated that "Greg" was in possession of a handgun and illegal narcotics (cocaine and marijuana). (*Id.*) The CRI provided to Deputy Marshall a cell phone number (612-xxx-xxx4) for "Greg," who "checked the Clear and DVS websites" where he found a picture of McCoy "related to this cell phone number." (*Id.*) Deputy Marshall showed the CRI the picture with all names and other information removed, and the CRI stated that McCoy is "Greg." (*Id.*)

Using the DVS website, Deputy Marshall learned McCoy has a 2002 Chevrolet Blazer registered in his name at the Sheridan Avenue address. (*Id.*) Deputy Marshall indicated that, through surveillance, he had seen this vehicle parked in front of the Sheridan Avenue address. (*Id.*) Deputy Marshall also learned that McCoy is prohibited from possessing a firearm as a result of previous felony convictions. (*Id.* at 3.)

The CRI indicated "Greg" stays with a male named "Pumpkin." (*Id.*) "Pumpkin" stays near 29th Avenue North and Sheridan Avenue. (*Id.*) "Pumpkin" sells narcotics, possesses a handgun, and drives a black Range Rover. (*Id.*) Deputy Marshall indicated that, through surveillance, he observed the black Range Rover parked in the rear of the Sheridan Avenue address. (*Id.*) Deputy Marshall showed a photograph of the parked

vehicle to the CRI, who indicated it was identical to the black Range Rover they had seen McCoy driving. (*Id.*) The CRI provided a cell phone number (612-xxx-xxx7) for "Pumpkin" to Deputy Marshall, who learned it was listed to John Turnage. (*Id.*) Deputy Marshall showed the CRI a picture of Turnage with all information removed, and the CRI stated that Turnage is "Pumpkin." (*Id.*) Deputy Marshall learned that Turnage is prohibited from possessing a firearm as a result of previous felony convictions. (*Id.*)

Deputy Marshall set up a controlled buy using the CRI within 72 hours of the affidavit. (*Id.*) Deputy Marshall and other task force members met with the CRI, then searched the CRI and the vehicle for cash and contraband, finding none. (*Id.*) The CRI then called Turnage to set up a deal to purchase marijuana. (*Id.*) Law enforcement observed Turnage leave the Sheridan Avenue address, go directly to the designated meeting spot to meet with the CRI, then return directly to the Sheridan Avenue address. (*Id.* at 3–4.) The CRI went directly from the meeting spot to another location while followed by law enforcement, and then handed over the marijuana sold by Turnage. (*Id.* at 4.)

In his affidavit, Deputy Marshall stated that, based on his training and experience, people who distribute controlled substances often use firearms to protect themselves and their narcotics and keep them well-hidden. (*Id.*) Deputy Marshall also stated that it is common for suspects involved in narcotics distribution to hide illegal narcotics or firearms in vehicles and garages to conceal from police and for quick access. (*Id.*) Deputy Marshall likewise stated that persons involved in narcotics distribution use other tools, have financial documents, and use electronic devices. (*Id.* at 4–5.) Law enforcement were

7

granted the search warrant on October 15, 2019, and executed it at the Sheridan Avenue address on October 22, 2019. (*Id.* at 10–13.)

McCoy argues the Deputy Marshall left out information that would have impacted the judge's probable cause analysis. Deputy Marshall did not include information that the phone number for "Greg" also was linked to a "Craig Davis" with a West Broadway Avenue West address in Minneapolis. (Doc. No. 83 at 54–57; Doc. No. 78 at 2.) And the phone number for Turnage was billed to an address in Roseville, Minnesota. (Doc. No. 83 at 4–8; Doc. No. 78 at 2.)

This information has no bearing on the probable cause analysis. Deputy Marshall's affidavit detailed how he used the phone number look-up merely to locate photographs. Deputy Marshall then used those photographs to better identify "Greg" and "Pumpkin" known by the CRI. Simply put, Deputy Marshall was not trying to tie those phone numbers to any specific person or address, it was only background investigative work.

But more importantly, the phone numbers have no bearing on the drug activity tied to the Sheridan Avenue address. Law enforcement conducted a controlled buy where Turnage left the Sheridan Avenue address, went directly to sell marijuana to the CRI, then returned immediately to the Sheridan Avenue address. Courts have found probable cause in similar situations. In *O'Neil v. United States*, an informant told law enforcement that a woman and man were selling drugs out of an apartment. 966 F.3d 764, 771 (8th Cir. 2020). Law enforcement conducted a controlled purchase, watching a woman walk from the apartment, make the sale, then return to the apartment. *Id.* at 771–72. The same happened here: the CRI told law enforcement that Turnage and McCoy were involved in

drug dealing; Turnage left the Sheridan Avenue address, went directly to a controlled buy, then directly returned to the Sheridan Avenue address. Such a direct link between a drug transaction and a residence "plainly demonstrate[s] a sufficient nexus" between the illegal activity and the residence to be searched. *United States v. Ellison*, 632 F.3d 347, 349 (6th Cir. 2011); *United States v. Archibald*, 685 F.3d 553, 557–58 (6th Cir. 2012) (finding a single controlled buy, which was executed under surveillance, was enough to establish probable cause for a search warrant of the apartment where the buy occurred). There was no deliberate or reckless disregard in omitting the extraneous telephone information from the Sheridan Avenue warrant application, and the information not included has no bearing on the probable cause analysis.

McCoy asserts various issues related to the vehicles. McCoy claims that he sold the 2002 Chevrolet Trailblazer "weeks before the executed warrant." (Doc. No. 76 at 10; Doc. No. 77 at 10; Doc. No. 78 at 2–3.) Thus, McCoy argues the information was stale and inaccurate. (Doc. No. 76 at 10; Doc. No. 77 at 10; Doc. No. 78 at 2–3.) McCoy also asserts that the black Range Rover is registered to Denise Pickford, not Turnage. (Doc. No. 80 at 2; Doc. No. 78 at 4.) Thus, McCoy argues that Deputy Marshall made a false statement in the warrant application. (Doc. No. 76 at 11; Doc. No. 77 at 11.)

Like with the phone numbers, this vehicle information has no bearing on the probable cause analysis. The Chevrolet Trailblazer was not tied to drug dealing. Rather, it was registered to McCoy at the Sheridan Avenue address. This information linked McCoy to Sheridan Avenue. Even if McCoy sold the Trailblazer "weeks before" the search warrant was executed, there was no indication that he no longer lived at the

9

Sheridan Avenue address. Thus, the recent presence of the Trailblazer, its registration to Sheridan Avenue, and McCoy's presence at Sheridan Avenue were sufficient to tie McCoy to Sheridan Avenue. Additionally, that Turnage was not the registered owner of the Range Rover is of no moment where Turnage was seen using it. But even then, this information is all irrelevant to the Sheridan Avenue warrant where probable cause was sufficient based on Turnage's participation in the controlled buy. As discussed above, this direct movement from the Sheridan Avenue address to drug sale back to Sheridan Avenue provided probable cause for the search warrant. There was no deliberate or reckless disregard in omitting the vehicle information from the warrant application, and the information not included has no bearing on the probable cause analysis.

      McCoy raises various issues with the addresses. McCoy asserts a Department of Vehicle Services search would have shown that McCoy's drivers license listed him as living in North St. Paul and Turnage as living in Roseville. (Doc. No. 76 at 11; Doc. No. 77 at 11; Doc. No. 78 at 2.) McCoy also argues that the Sheridan Avenue address was a boarding house and Deputy Marshall should have known this. (Doc. No. 76 at 4, 16; Doc. No. 77 at 4, 16.) Further, Deputy Marshall did not speak to McCoy or Turnage's probation agents who could have corroborated information, such as McCoy renting a single room at the Sheridan Avenue address and Turnage was living at Tyler Street in Minneapolis. (Doc. No. 76 at 11; Doc. No. 77 at 11 Doc. No. 78 at 3.) McCoy provided a copy of his lease for [XXXX] Sheridan Avenue North, Minneapolis MN. (Doc. No. 100.)

      As already alluded to, it was not Deputy Marshall's job to tie McCoy and Turnage to the Sheridan Avenue address to the exclusion of any other address whatsoever. Deputy

10

Marshall provided sufficient information showing McCoy and Turnage were tied to the Sheridan Avenue address in some capacity. McCoy had a car recently registered there. Turnage was seen at the residence. The CRI associated both McCoy and Turnage with drug dealing nearby. But it bears repeating, probable cause was sufficient from the clear link between the Sheridan Avenue address and the controlled drug buy. It simply did not matter if McCoy and Turnage had other apartments or houses elsewhere. There was no deliberate or reckless disregard in omitting this information from the Sheridan Avenue warrant, and the information not included has no bearing on the probable cause analysis.

Whether looking at this information individually or in amalgamation, it renders no change to the Sheridan Avenue search warrant. Deputy Marshall's search warrant application included sufficient information to establish probable cause. It was not inappropriate for him to leave out the facts McCoy asserts should have been included. McCoy has not made a substantial preliminary showing that Deputy Marshall made a false statement or omission that had or would have had any effect on the probable cause finding. McCoy's motion for a *Franks* hearing is denied.

11.   **McCoy's Pretrial Motion to Disclose and Make Informant Available for Interview (Doc. No. 48) is DENIED as follows:** Pursuant to *Roviaro v. United States*, 353 U.S. 52 (1957), McCoy seeks disclosure of confidential reliable informants and to interview any such informants. The Government opposes and asserts the informant privilege.

The informant privilege is "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers

charged with enforcement of that law." *Id.* at 59. "In a motion to compel disclosure of a confidential informant, the defendant bears the burden of demonstrating a need for disclosure." *United States v. Wright*, 145 F.3d 972, 975 (8th Cir. 1998). There is "no litmus test for determining when disclosure is required." *United States v. Lapsley*, 334 F.3d 762, 764 (8th Cir. 2003). There "is generally a strong presumption against disclosure if the confidential informant is a mere 'tipster.'" *United States v. Lindsey*, 284 F.3d 874, 877 (8th Cir. 2002). To overcome the government's privilege of nondisclosure, a defendant "must establish beyond mere speculation that the informant's testimony will be material to the determination of the case." *Id.*

Here, McCoy is charged based on law enforcement locating a firearm in a vehicle. Law enforcement first started investigating McCoy and Turnage through a tip from a CRI that "Greg" and "Pumpkin" were dealing drugs and had firearms. Law enforcement identified those two as McCoy and Turnage. Law enforcement then used the CRI to conduct a controlled buy with Turnage. As discussed, Turnage went directly from the Sheridan Avenue address to the buy and back. Based on this, law enforcement secured a search warrant for the Sheridan Avenue address. In executing that search warrant, law enforcement witnessed McCoy toss a baggie of cocaine. Law enforcement located other cocaine and a pistol during the search as well. Then, a police dog alerted to a Dodge Durango, registered to McCoy. Based on this information, the CRI here constitutes a mere tipster. The Government does not appear to need any of the CRI's testimony to prove its case, it can be done entirely through the law enforcement handlers of the CRI and law enforcement observations. The CRI is too far removed from the firearm located

in McCoy's vehicle for the disclosure of the CRI's identity to be material to McCoy's defense. Accordingly, the motion is denied.

12. **McCoy's Motion to Suppress Evidence Obtained in Violation of the Fourth Amendment (Doc. No. 74)**. McCoy seeks an order suppressing any physical evidence obtained from the execution of a search warrant at the residence on Sheridan Avenue in Minneapolis, Minnesota. Evidence from that search led to a search of a Dodge Durango. Because McCoy's motion for a *Franks* hearing is denied, McCoy's motion to suppress will be taken under advisement and the Court will issue a **Report and Recommendation** to the District Court.

Date: May 19, 2021

 *s/ Becky R. Thorson*
BECKY R. THORSON
United States Magistrate Judge